UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

UNITED STATES OF AMERICA

    -against-                                    <u>MEMORANDUM & ORDER</u>

TYQUAN MIDYETT,                                    07-CR-874 (KAM)

                Defendants.

----------------------------------X

MATSUMOTO, United States District Judge:

           Defendant Tyquan Midyett is charged in a February 2009
superseding indictment ("Indictment") with one count of
conspiring, between May 2006 and December 2007, to distribute
and possess with intent to distribute cocaine base in violation
of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(iii) (Count 1);
three counts of distributing and possessing with intent to
distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1),
in, on and within 1,000 feet of (a) the real property comprising
a private elementary and secondary school, and (b) the real
property comprising a housing facility owned by a public housing
authority in violation of 21 U.S.C. § 860(a) (Counts 2, 5 & 10);
and one count of possessing a firearm after having previously
been convicted of a crime punishable by a term of imprisonment
exceeding one year in violation of 18 U.S.C. § 922(g)(1) (Count
11).

By letter dated July 8, 2008, the government moves *in limine* to introduce at trial evidence of Midyett's uncharged criminal act of allegedly possessing a gun on December 10, 2007,[1] as well as his November 30, 2000 arrest and subsequent conviction on March 7, 2001 for criminal possession of a controlled substance in the third degree.[2] (Dkt. 95, Government's Letter Motion to Introduce Evidence Pursuant to Rule 404(b) ("Gov. Mem."), dated July 8, 2008, pp. 1-3.) For the reasons set forth herein, the government's motion is granted in part and denied in part.

---

[1] In its July 8, 2008 submission, the government sought to introduce evidence of an uncharged gun possession by Midyett on July 3, 2007 (which the government mistakenly noted as July 7, 2008 in its July 8, 2008 submission.) (Dkt. 95, Government's Letter Motion to Introduce Evidence Pursuant to Rule 404(b) ("Gov. Mem."), dated July 8, 2008, at p. 3.) However, the government subsequently charged Midyett with the July 3, 2007 gun possession in the February 2009 superseding indictment ("Indictment"). (Dkt. 203, Government's Reply in Support of Motion to Introduce Evidence Pursuant to Rule 404(b) ("Reply"), dated December 15, 2008, at p. 20 n. 3; Indictment, Count 11.) The government first sought the admission of the uncharged December 10, 2007 gun possession in its Reply, submitted on December 15, 2008. (Reply at p. 20 n. 3.)

[2] The government initially sought to introduce evidence of a variety of uncharged and/or prior criminal acts of defendants Michael Brown, Nicholas Hayes, Brian Santano and Tyquan Midyett. (*See* Gov. Mem. at pp. 1-10.) However, in a letter dated February 9, 2009, the government withdrew its July 8, 2008 motion regarding Midyett except with respect to its request to introduce evidence of (1) Midyett's November 30, 2000 arrest and subsequent conviction for criminal possession of a controlled substance on March 7, 2001, and (2) Midyett's alleged gun possession on December 10, 2007. (Dkt. 238, Government's Letter to the Court, dated February 9, 2009.)

# I.  BACKGROUND

The charges in the Indictment stem from Midyett's alleged involvement in a conspiracy to sell crack cocaine in and around the Marcy Houses, a public housing complex run by the New York City Housing Authority in the Bedford-Stuyvesant neighborhood in Brooklyn, New York, beginning in or around May 2006 and terminating in or around December 2007.[3]  (Indictment, Count 1.)  The government intends to present evidence that (1) Midyett participated in several crack cocaine transactions as part of the alleged conspiracy, some of which were captured on videotape; (2) during one of these videotaped narcotics transactions, on July 3, 2007, Midyett showed a cooperating witness a gun, which he referred to as the "Atlanta Police" handgun; (3) Midyett was arrested on January 9, 2007, along with co-defendant Michael Brown, during a search of Brown's apartment at 125 Nostrand Avenue, from which officers seized 60-70 vials of crack cocaine and a .22 caliber revolver; from outside the apartment, officers also recovered additional vials of crack cocaine in a Ziploc-style bag, which had allegedly been thrown

---

[3]       Although the government's moving and supporting papers set forth the term of the conspiracy as extending between May 2006 and November 2007, the Indictment extends the period of the conspiracy as continuing from May 2006 through December 2007. (*See* Gov. Mem. at p. 6; Reply at p. 17; Indictment, Count 1.) Accordingly, the court accepts for purposes of deciding the instant motion, the Indictment's charge that the alleged conspiracy existed between May 2006 and December 2007.

from Brown's bathroom window; and (4) Midyett was again arrested for selling vials of crack cocaine to an undercover police officer at the Marcy Houses on December 10, 2007 and that the officer observed "the handle of a gun" on Midyett's person during the transaction; the gun was never recovered. (Gov. Reply at p. 3; dkt. 224, Government's Sur-Reply in Support of Motion to Introduce Evidence Pursuant to Rule 404(b) ("Gov. Sur-Reply"), dated January 12, 2009, at p. 2); *U.S. v. Brown et al.,* No. 07-cr-874, 2009 U.S. Dist. LEXIS 7777, at *2, *10-31 (E.D.N.Y. Feb. 3, 2009); *U.S. v. Midyett,* No. 07-cr-874, 2009 U.S. Dist. LEXIS 8865, at *13, *15 (E.D.N.Y. Feb. 6, 2009).

In the instant motion, the government seeks, *inter alia*, to introduce evidence of Midyett's arrest on November 30, 2000 at 125 Nostrand Avenue in the Marcy Houses in Brooklyn, New York under Federal Rule of Evidence 404(b). (Gov. Mem. at p. 3.) The government intends to offer evidence that the police officer allegedly observed Midyett having difficulty opening a door and when he inquired whether there was a problem, Midyett allegedly attempted to grab the officer's gun, attempted to assault the officer, and attempted to flee. (*Id.*) Midyett denies these allegations of a struggle with the police officer. (Dkt. 185, Midyett's Response In Opposition to the Government's Motion to Introduce Evidence Pursuant to Rule 404(b) ("Midyett Response"), dated December 1, 2008, at p. 4.) The government

4

also seeks to introduce evidence that, upon his arrest, Midyett was found in possession of 60 vials of crack cocaine and subsequently pleaded guilty on March 7, 2001 to criminal possession of a controlled substance in the third degree, and was sentenced to one to three years in prison. (Gov. Mem. at p. 3.)

The government also moves for the admission of evidence pursuant to Rule 404(b), or as direct proof of the drug conspiracy, or both, that, on December 10, 2007, Midyett was observed in possession of a firearm, specifically, a .9 millimeter Smith and Wesson. (Gov. Reply at p. 20 & n. 3.)

Midyett argues in essence that the proffered evidence should be precluded under Federal Rule of Evidence 403, because its limited probative value is substantially outweighed by the danger of unfair prejudice. (Midyett Response at pp. 2-4.) Midyett also contends that the proffered evidence is outside the scope of the conspiracy, and thus, is not relevant under Federal Rule of Evidence 402, however, as superseded in February 2009, the Indictment now charges that the conspiracy existed between May 2006 and December 2007. (Midyett Response at pp. 4-5; Dkt. 211, Midyett's Sur-Reply in Opposition to the Government's Motion to Introduce Evidence Pursuant to Rule 404(b) ("Midyett Sur-Reply"), dated December 23, 2008, at pp. 1-2); *see supra* at p. 3 n.3 & *infra* at p. 25 n.7.

## II.   DISCUSSION

### A. MOTION *IN LIMINE*

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria,* 88 F.3d 136, 141 (2d Cir. 1996); *Nat'l. Union Fire Ins. Co. v. L.E. Myers Co. Group,* 937 F. Supp. 276, 283 (S.D.N.Y. 1996). Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. *See also Baxter Diagnostics, Inc. v. Novatek Med., Inc.,* No. 94-cv-5520, 1998 U.S. Dist. LEXIS 15093, at *11 (S.D.N.Y. Sept. 25, 1998). Indeed, courts considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context. *See Nat'l. Union Fire Ins. Co.,* 937 F. Supp. at 287. Further, the court's ruling regarding a motion *in limine* is "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer." *Luce*, 469 U.S. at 41.

### B. ADMISSIBILITY OF MIDYETT'S NOVEMBER 30, 2000 ARREST AND SUBSEQUENT MARCH 7, 2001 CONVICTION UNDER RULE 404(b)

The government moves to admit evidence of Midyett's November 30, 2000 arrest at 125 Nostrand Avenue, Brooklyn, New York and his subsequent March 7, 2001 conviction for criminal

possession, as "other act" evidence, pursuant to Rule 404(b), regarding charges against Midyett for, *inter alia*, drug possession and distribution. Federal Rule of Evidence 404(b) provides in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b).

The Supreme Court has set forth four requirements for courts to follow in exercising their discretion under Rule 404(b): "Prior bad-acts evidence must be (1) offered for a proper purpose, (2) relevant, and (3) substantially more probative than prejudicial. In addition, (4) at defendant's request, the district court should give the jury an appropriate limiting instruction." *United States v. Downing,* 297 F.3d 52, 58 (2d Cir. 2002) (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)). Courts of the Second Circuit have adopted an "inclusionary approach" under Rule 404(b), admitting evidence of other crimes, wrongs or acts "unless it is introduced for the sole purpose of showing defendant's bad character, or unless it is overly prejudicial under Fed. R. Evid. 403 or not relevant under Fed. R. Evid. 402." *United States v. Pascarella*, 84 F.3d

61, 69 (2d Cir. 1996). In the Rule 404(b) context, the court
need only determine that a "jury [could have] reasonably
conclude[d] that the [other] act occurred and that the defendant
was the actor." *See Huddleston,* 485 U.S. at 689. The district
court has broad discretion to admit evidence pursuant to Rule
404(b), and its ruling will not be overturned on appeal absent
abuse of discretion. *See United States v. Carboni*, 204 F.3d 39,
44 (2d Cir. 2000).

The Government contends that evidence of Midyett's
November 30, 2000 arrest and subsequent March 2001 conviction
are admissible under Rule 404(b) because such evidence is
probative of Midyett's knowledge and/or intent, and thus, may
rebut any defense in which Midyett claims a lack of requisite
knowledge and/or intent. Indeed, the government asserts that
Midyett has already proffered defense theories that bring his
state-of-mind into question. Namely, based on Midyett's own
affidavit regarding his January 9, 2007 arrest, the government
contends that Midyett intends to pursue a "mere presence"
defense theory with respect to any charges stemming from the
January 9, 2007 arrest. (Dkt. 147, Midyett Affidavit ("Midyett
Aff."), sworn on September 10, 2008, at ¶¶ 2-3; Gov. Reply at
pp. 15-16.)

In this affidavit, Midyett states that, on January 9,
2007, he was "visiting a legal resident of [125 Nostrand Avenue,

Apt. 2A]" and that he "was not engaged in any type of illegal activity" nor "observed any of the occupants . . . engaged in any type or form of illegal activity" when police officers conducted a search of the premises and found the vials of crack cocaine and a firearm, leading to the arrest of Midyett. (Midyett Aff. at ¶ 1-4); *Brown*, 2009 U.S. Dist. LEXIS 7777, at *1-2. From these statements, the government concludes that Midyett is asserting that he (1) did not knowingly and intentionally possess the crack cocaine found in Apt. 2A on January 9, 2007 and (2) had an innocent motive for his presence at Apt. 2A, *i.e.* a visit to a friend. (Gov. Reply at pp. 15-16.) In sum, the government contends, Midyett is claiming that he was "merely present" at Apt. 2A at the time of the search. (*Id.*)

The similarities between *United States v. Rodriguez*, 53 F.3d 545 (2d Cir. 1995) and the instant case appear to support a finding that in placing his motive for visiting Apt. 2A at issue, Midyett is also putting his state of mind at issue. *See Rodriguez*, 53 F.3d at 546. However, in his Response, Midyett explicitly states that he has "not offered a defense based upon lack of knowledge [or] intent" (Midyett Response, at p. 6), and Midyett neglects to mention whether he intends to pursue such defenses at trial. Accordingly, based on the current record, the court is reluctant to find that Midyett has

put his knowledge or intent to commit the charged crimes at issue for purposes of introducing 404(b) evidence in the government's case-in-chief.

Even assuming that the government proffered the evidence of Midyett's November 30, 2000 arrest and March 7, 2001 conviction for a proper purpose, *i.e.* to prove knowledge or intent, prior act evidence cannot be admitted as proof of defendant's knowledge or intent unless the other act is

> "sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge [or intent] inference advocated by the proponent of the evidence." *United States v. Peterson,* 808 F.2d 969, 974 (2d Cir. 1987). "Similarity, being a matter of relevancy, is judged by the degree in which the prior act approaches near identity with the elements of the offense charged. There is no necessity for synonymity but there must be *substantial* relevancy . . . ." *United States v. Kasouris,* 474 F.2d 689, 692 (5th Cir. 1973) (emphasis in original). If the other-act evidence does not provide a reasonable basis for inferring knowledge or intent, its offer for that purpose should be rejected on grounds of relevance.

*United States v. Aminy,* 15 F.3d 258, 260 (2d Cir. 1994); *see* Fed. R. Evid. 401 ("'Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

Under *Aminy*, the court acknowledges some similarity between the charged conduct in the Indictment, *i.e.* drug possession and distribution, and Midyett's November 30, 2000 arrest, *i.e.* Midyett's possession of 60 vials of crack cocaine at the time of his arrest.  Midyett's alleged altercation with the arresting officer on November 30, 2000, however, is distinct from the drug possession and distribution offenses charged in the Indictment.  There is no "near identity" between the elements of the offenses charged and the alleged offenses proffered by the government, including Midyett's alleged attempt to grab the officer's gun, his alleged assault on the officer and his alleged attempted flight preceding the November 30, 2000 arrest.  Moreover, Midyett is not charged with any criminal conduct, *e.g.* assaulting an officer or resisting arrest, wherein the details of the circumstances preceding his November 30, 2000 arrest could provide a reasonable basis to infer knowledge and/or intent.

Further, the court finds that any slight probative value regarding the events preceding Midyett's November 30, 2000 arrest is far outweighed by the prejudicial nature of such evidence.  To determine whether evidence is unduly prejudicial, the court considers the evidence in the context of the crime alleged.  Evidence shall be excluded as unduly prejudicial when it is "more inflammatory than the charged crime." *United States*

*v. Livoti,* 196 F.3d 322, 326 (2d Cir. 1999); *cf. United States*
*v. Pitre,* 960 F.2d 1112, 1120 (2d Cir. 1992) (no unfair
prejudice where "evidence of prior narcotics transactions 'did
not involve conduct any more sensational or disturbing than the
crimes with which [the appellants were] charged.'") (quoting
*United States v. Roldan-Zapata,* 916 F.2d 795, 804 (2d. Cir.
1990)). Where, as here, the prior conduct, namely, the alleged
scuffle and assault, bears no similarity to the crime charged,
the inflammatory and non-probative nature of the prior conduct
is almost assured. Indeed, it is more than conceivable that
evidence of the November 30, 2000 arrest and particularly, of
the alleged altercation between Midyett and the arresting
officer would be more inflammatory, sensational and/or
disturbing to the jury than the charged offenses of drug
possession and distribution. Accordingly, the court denies the
government's application to introduce evidence of the November
30, 2000 arrest, including any evidence of the alleged
altercation between the police officer and Midyett.

       The court agrees with the government that evidence of
Midyett's March 7, 2001 drug possession conviction, which
resulted from his November 30, 2000 arrest, would be admissible
to rebut any claim made by Midyett that he lacked the requisite
state of mind to commit the charged drug-related crimes. "[I]t
is well settled that evidence of other crimes may be used to

show a person's knowledge or intent." *United States v. Brand*, No. S1 04-cr-194, 2005 U.S. Dist. LEXIS 471, at *13 (S.D.N.Y. Jan. 12, 2005) (citing *United States v. Bok*, 156 F.3d 157, 165-66 (2d Cir. 1998)); *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993) ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged.")  Further, as Midyett was convicted of drug possession in March 2001, and is presently charged for similar crimes occurring at the same address (125 Nostrand Avenue), involving similar amounts (60-70 vials) of the same type of drug (crack cocaine), the court finds that evidence of the prior conviction is "sufficiently similar" and "substantially relevant" to the charged conduct to provide the jury with a reasonable basis to infer knowledge and/or intent, should Midyett raise the lack of intent or knowledge defenses.  *See Aminy,* 15 F.3d at 260.  Finally, the probative value of such evidence clearly outweighs any unfair prejudice, as the March 2001 conviction involved similar conduct that is not "any more sensational or disturbing" or "more inflammatory" than the crimes with which Midyett is charged.  *See Roldan-Zapata,* 916 F.2d at 804; *Livoti,* 196 F.3d at 326.

Where, as here, the government's evidence of uncharged acts, *e.g.*, the March 2001 conviction, "is offered to prove the

defendant's knowledge or intent, the offer of similar acts evidence should await the conclusion of the defendant's case and should be aimed at a specifically identified issue." *United States v. Ozsusamlar,* 428 F. Supp. 2d 161, 167 (S.D.N.Y. 2006) (quoting *United States v. Figueroa*, 618 F.2d 934, 939 (2d Cir. 1980)); *Brand*, 2005 U.S. Dist. LEXIS 471, at *13 ("other crimes evidence offered to prove the defendant's knowledge or intent may be admitted only after the defendant has asserted a state of mind defense, putting knowledge and intent at issue") (collecting cases). Accordingly, the court denies the government's application to introduce evidence of the March 2001 conviction without prejudice. The government may renew its application to introduce this evidence at the conclusion of Midyett's case, if the government believes that Midyett has placed his state of mind at issue.

## C. ADMISSIBILITY OF MIDYETT'S DECEMBER 10, 2007 GUN POSSESSION AS EVIDENCE OF THE JULY 3, 2007 FELON-IN-POSSESSION CHARGE (INDICTMENT, COUNT 11).[4]

The government also seeks to admit evidence of Midyett's alleged December 10, 2007 gun possession to prove that Midyett, a felon, possessed a gun on July 3, 2007.  (Indictment, Count 11; Gov. Reply at pp. 20-22.)  The evidence of the alleged December 10 gun possession is likely to be presented during the testimony of an undercover police officer (whose testimony at the January 15-16, 2009 suppression hearing, the court determined to be credible.)  *Midyett,* 2009 U.S. Dist. LEXIS 8865, at *25-26 n. 6.  The undercover conducted a buy-and-bust operation at the Marcy Houses involving Midyett on December 10, 2007.  According to the undercover's testimony, during a drug transaction with Midyett -- in which the undercover bought vials of crack cocaine from Midyett -- the undercover observed "the handle of a gun" on Midyett's person.  When Midyett noticed the undercover looking at his gun, Midyett "smirked and said don't worry about that."  *Id.* at *15-16 (quotations omitted).  Shortly

---

[4]     Although presented as support for its opposition to sever, insofar as the government seeks to admit evidence of Midyett's July 3, 2007 gun possession as Rule 404(b) evidence of Brown's January 9, 2007 gun possession, the court denies this application in its entirety.  Even if, as the government posits, "Midyett [were to] argue at trial that he had an innocent motive for being present [in Brown's apartment on January 9, 2007] where the charged firearm was found," the July 3 gun possession by Midyett is not relevant to proving that Brown possessed a gun seven months prior on January 9, 2007.  (Gov. Sur-Reply at p. 3.)

after the buy, Midyett was arrested by other detectives involved in the operation.  Despite a thorough search of Midyett's person and the surrounding area, however, the gun observed by the undercover was never recovered.  *Id.* at *13.

Although the undercover never testified with regard to the make or caliber of the gun at the January 15-16, 2009 suppression hearing, *id.* at *13-18, the government now states that the gun in Midyett's possession on December 10, 2007 ("December 10 gun") was a .9 millimeter Smith and Wesson.  (Gov. Reply at p. 20.)  The government offers no affidavits or other evidentiary proof to support this statement.  Further, the government states, in conclusory fashion, that the December 10 gun is the same gun that was observed in Midyett's possession on July 3, 2007 ("July 3 gun").  (*Id.*)  However, with the exception of Midyett's reference to the July 3 gun as the "Atlanta Police" handgun, the government offers no description of the July 3 gun nor proffers any evidence that the December 10 gun and the July 3 gun are the same gun or even guns of a similar type and/or caliber.  (*Id.* at 3-4, 20-22.)

### 1. Admissibility As "Other Act" Evidence Under Rule 404(b).

Based on its conclusory assertion that the December 10 gun and the July 3 gun are the same gun, the government contends that evidence of Midyett's December 10 gun possession is

admissible under Rule 404(b) to prove that Midyett possessed the
same gun five months prior, *i.e.* on July 3, 2007. (*Id.* at 20.)

The court first notes that the government seeks to
introduce evidence under Rule 404(b) of Midyett's *subsequent*
uncharged criminal conduct in contrast to the more usual case
scenarios involving prior criminal conduct offered to prove the
charged offense. Nevertheless, the Second Circuit "has refused
to erect a *per se* bar to evidence of 'other acts' occurring
after the charged offense." *United States v. Rutkoske*, 506 F.3d
170, 177 (2d Cir. 2007). Indeed, "[t]he fact that the evidence
involved a subsequent rather than prior act is of no moment,"
*United States v. Germosen*, 139 F.3d 120, 128 (2d Cir. 1998), and
the "admission of subsequent acts under Rule 404(b) is governed
by the same four-part test as prior acts," *i.e.* (1) proper
purpose; (2) relevance; (3) probative value outweighs unfair
prejudice; and (4) limited jury instruction on defendant's
request. *Rutkoske*, 506 F.3d at 177; *see also Sand v. Presley*,
24 Fed. Appx. 12, 14 (2d Cir. 2001).

The government contends that the proper purpose of the
December 10 gun possession is "to prove that Midyett had the
*opportunity* to possess" the same gun on July 3, 2007. (Gov.
Reply at p. 20 (emphasis added).) Based on the current record,
however, it is not clear whether the issue of opportunity will
be raised in this case. Midyett's defense may or may not raise

issues to which testimonial evidence of the December 10 gun possession may be relevant and admissible under Rule 404(b).[5] Thus, the government may renew its application to admit the December 10 gun possession as 404(b) evidence of the charged July 3 gun possession at the conclusion of the defense's case. *See Ozsusamlar,* 428 F. Supp. 2d at 167.

Further, assuming, *arguendo,* that opportunity is an issue at trial, based on the present record, the relevance of the December 10 gun possession to the charged July 3 gun possession would still pose an obstacle to admission under Rules 402 and 403. The court recognizes the potential danger of unfair prejudice in permitting the introduction of an uncharged gun possession to prove that the defendant had the opportunity

---

[5] "Opportunity" is the only proper purpose currently asserted by the government in seeking to introduce the December 10 gun possession as 404(b) evidence of the charged July 3 felon-in-possession offense. However, subsequent criminal conduct has also been admitted under Rule 404(b) as evidence of, *inter alia*, intent, knowledge and/or motive. *See Rutkoske*, 506 F.3d at 178 (where defendant argued a lack of knowledge at trial, subsequent similar conduct was properly admitted under Rule 404(b) as relevant and probative); *Sand,* 24 Fed. Appx. at 14 ("Courts may properly admit evidence of acts defendant took subsequent to the crimes for which he is on trial in order to prove defendant's intent."); *Germosen*, 139 F.3d at 128 (same); *United States v. Stokes*, 229 Fed. Appx. 347, 348 (5th Cir. 2007) (when defendant argued that he "did not knowingly possess the firearm," subsequent firearms offense admissible to prove intent and knowledge."); *United States v. Lego*, 855 F.2d 542, 546 (8th Cir. 1988) (evidence of subsequent gun possession admissible when defendant asserted that "he only carried the weapons on the dates charged in the indictment because of the inducement of government agents," thereby raising an issue of motive.)

to possess the gun on the date charged.  There is a high
likelihood that such evidence will be considered as
demonstrating the defendant's propensity to possess guns in
general as opposed to demonstrating that he committed the
specific charged offense.  To balance against this high risk of
unfair prejudice, courts in the Second Circuit seem to require
substantial more relevancy, *i.e* similarity between the charged
gun possession and the uncharged gun possession, before
permitting the introduction of the uncharged gun possession as
evidence of the charged gun possession.  *See Aminy*, 15 F.3d at
260; *see generally, United States v. Robinson*, 560 F.2d 507, 513
(2d Cir. 1977); *United States v. Belk,* 2002 U.S. Dist. LEXIS
3427, at *3 (S.D.N.Y. Mar. 4, 2002); *United States v. Slaughter*,
2004 U.S. Dist. LEXIS 6836, at *1-4 (S.D.N.Y. Apr. 20, 2004).
Namely, the similarity required is not merely similarity between
the prior conduct and the charged offense, but rather evidence
that the gun involved in the uncharged criminal possession is
the same or similar to the gun involved in the charged offense.
*Robinson*, 560 F.2d at 513 (evidence that the defendant possessed
the same or a similar gun -- a .38 caliber -- ten weeks after
the charged offense held admissible under Rule 404(b) to prove
opportunity and identity); *Belk*, 2002 U.S. Dist. LEXIS 3427, at
*3 (the description of the gun observed by a witness one month
prior to the charged offense matched the description set forth

in the indictment); *Slaughter,* 2004 U.S. Dist. LEXIS 6836, at *1-2, *4 (evidence of prior gun possessions admissible to prove opportunity, preparation and plan, where the two prior gun possessions by defendant involved similar guns, *i.e.* a loaded semi-automatic pistol, and "the defendant used the same method of possessing the gun, [*i.e.*] with the separate magazine with additional bullets.") Thus, without evidence that the December 10 gun is the same or of a similar type and caliber as the July 3 "Atlanta Police" gun, the court cannot make a relevance determination. Nor, on the current record, can the court determine whether such evidence would be more probative of the charged July 3 gun possession or more prejudicial and confusing to the jury.

Accordingly, the court denies without prejudice the government's application to introduce evidence of the alleged December 10 gun possession as 404(b) evidence of the charged July 3, 2007 felon-in-possession offense. The government may, however, renew its application at the conclusion of Midyett's case, if the defense raises any issues that may be properly rebutted by Rule 404(b) evidence and the government presents evidence that the December 10 gun and the July 3 gun are the same gun or guns of a similar type and model.

## 2. Admissibility As Direct Evidence Of The Charged July 3, 2007 Felon-In-Possession.

Although not raised by the government, the December 10 gun possession is also not admissible as direct evidence of the July 3 gun possession charged in the indictment.

It is well established in the Second Circuit that "'evidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it [1] arose out of the same transaction or series of transactions as the charged offense, [2] if it is inextricably intertwined with the evidence regarding the charged offense, or [3] if it is necessary to complete the story of the crime on trial.'" *United States v. Nektalov*, 325 F. Supp. 2d 367, 370 (S.D.N.Y. 2004) (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)). However, "where it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under *Rule* 404(b)." *Nektalov,* 325 F. Supp. 2d at 372.

In the instant case, there is nothing on the record to show that the alleged subsequent December 10 gun possession (1) "'arose out of the same transaction or series of transactions'" as the charged July 3 gun possession, (2) is "inextricably intertwined with the evidence regarding the charged" July 3 gun possession, or (3) "is necessary to complete the story of the

crime on trial." *Id.* Rather, the government has brought a
simple possession charge, founded on the contention that Midyett
had a specific weapon (the "Atlanta Police" handgun) on a
specific date (July 3, 2007). Thus, "the charged [July 3 gun
possession] crime is straightforward and may be fully understood
without reference to [evidence of the uncharged and alleged
December 10 gun possession.]" *United States v. Newton*, No. S1
01-cr-635, 2002 U.S. Dist. LEXIS 2414, at *6 (S.D.N.Y. Feb. 14,
2002).

Although not relied on by the government, the court
notes that *United States v. Towne*, 870 F.2d 880 (2d Cir. 1989)
does not support a finding of admissibility of the December 10
gun possession as direct evidence of the charged July 3 gun
possession. In *Towne*, the court found that the district court
had not erred in admitting evidence of the defendant's
possession of a Smith and Wesson pistol on dates other than the
single date specifically charged in the indictment as direct
evidence of the charged possession of a Smith and Wesson pistol.
*Towne,* 870 F.2d at 885-86. However, unlike *Towne*, the
government in the instant case has proffered no evidence that
the December 10 gun, allegedly a .9 millimeter Smith and Wesson
firearm, is the same weapon or the same type of weapon as the
July 3 "Atlanta Police" gun for which Midyett is charged. *See*
*Belk*, 2002 U.S. Dist. LEXIS 3427, at *5. Further, the facts

relating to the gun possession charge in *Towne* appear to have raised issues of continuous possession and/or identity. *See Towne*, 870 F.2d at 886. Indeed, the *Towne* court held that the evidence of the other uncharged gun possessions was "*not* 'other crimes' evidence within the meaning of Rule 404(b). Rather, the evidence was admitted to show that it was [defendant] and not someone else who exercised continuous dominion and control over the pistol . . . ." *Id.* (emphasis in original) (noting that "[t]he continuous possession of the same gun does not amount to a series of crimes, but rather constitutes a single offense.") Here, continuous possession is not an issue because evidence of the December 10 gun possession cannot be introduced to show continuity of possession from July 3 through December 10, 2007, given that Midyett is charged with the July 3 gun possession and not the alleged December 10 gun possession. Moreover, there has been no indication that Midyett will present a defense arguing that he was mistakenly identified as the person in possession of the gun on July 3, 2007. *See Belk*, 2002 U.S. Dist. LEXIS 3427, at *6.

Rather, the issues presented by Midyett's July 3 gun possession charge are more analogous to those present in *United States v. Belk*, No. 01-cr-180, 2002 U.S. Dist. LEXIS 3427 (S.D.N.Y. Mar. 4, 2002). There, like here, the government did not offer any evidence that the uncharged gun possession

involved a gun that was the same gun or the same type of gun as the gun involved in the charged gun possession.[6] *Id.* at *6. There, like here, the issue to be determined at trial was whether defendant was in possession of the charged gun, the specific date in question. *Id.* Thus, in the absence of issues such as those identified in *Towne*, and as the question of continuous possession is not present for the July 3 gun possession charge, the probative value of the alleged December 10 gun possession evidence as to Midyett's guilt for the July 3 felon-in-possession charge is minimal at best. *Id.* Further, on the present record, the highly prejudicial nature of the December 10 gun possession far outweighs its minimal probative value. The jury should not be invited to assume that, because Midyett was allegedly observed in possession of a .9 millimeter Smith and Wesson firearm five months after the charged July 3

_____
[6]       The court notes, however, that the descriptions of both of the guns in *Belk* provide greater detail (and a better basis on which to determine relevance and similarity of the guns with respect to a Rule 404(b) analysis) than the descriptions of the guns provided in the instant case. In *Belk,* the witness allegedly observed a "large, black handgun" in the defendant's possession one month prior to his arrest and the gun seized by police officers during the defendant's arrest (and for which he was charged) was a .45 caliber Colt pistol (*i.e.* a large, black handgun). *Belk*, 2002 U.S. Dist. LEXIS 3427, at *5-6. In the instant case, the government now alleges that, notwithstanding the absence of such testimony by the undercover at the January 15-16, 2009 suppression hearing, the undercover observed a .9 millimeter Smith and Wesson firearm in Midyett's possession on December 10, 2007, whereas the gun for which Midyett is charged with possessing on July 3, 2007 is only described as the "Atlanta Police" gun.

gun possession, he possessed the "Atlanta Police" firearm on
July 3, 2007. *See id.* at *6-7. Accordingly, evidence of the
December 10 gun possession is not admissible as direct evidence
of the July 3, 2007 felon-in-possession charge.

### D. ADMISSIBILITY OF MIDYETT'S DECEMBER 10, 2007 GUN POSSESSION AS EVIDENCE OF THE DRUG CONSPIRACY (INDICTMENT, COUNT 1).

The government seeks, in the alternative, to admit
evidence of the December 10 gun possession to prove Midyett's
participation in the charged drug conspiracy.[7] (*See* Gov. Reply
at pp. 21-22; Indictment, Count 1.) The Second Circuit has
"repeatedly approved the admission of firearms as evidence of
narcotics conspiracies, because drug dealers commonly keep
firearms on their premises as tools of the trade." *United
States v. Vegas*, 27 F.3d 773, 778 (2d Cir. 1994) (quotations
omitted); *United States v. Becerra*, 97 F.3d 669, 671 (2d Cir.
1996); *United States v. Gadsen*, No. 07-cr-3455, 2008 U.S. App.
LEXIS 24125, at *2-3 (2d Cir. Nov. 24, 2008) ("testimony about .
. . firearm possession during or around the time of a narcotics
conspiracy appropriately established [defendant's] conduct

---

[7]     Although defense counsel asserts that the December 10,
2007 gun possession occurred after the termination of the drug
conspiracy, (Midyett Sur-Reply at pp. 1-2), the February 2009
superseding indictment sets the term of the conspiracy from May
2006 through December 2007. (*See supra* at p. 3 n. 3.)
Accordingly, as the December 10, 2007 gun possession occurred
during the conspiracy period, it is not considered subsequent
criminal conduct when it is proffered as evidence of the drug
conspiracy.

during the charged conspiracy.")  "'Experience on the trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade almost to the same extent as they keep scales, glassine bags, cutting equipment and other narcotics equipment.'"  *United States v. King*, No. 97-cr-1522, 1998 U.S. App. LEXIS 28265, at *6 (2d Cir. Nov. 9, 1998) (quoting *United States v. Wiener*, 534 F.2d 15, 18 (2d Cir. 1976)).  Evidence of Midyett's December 10 gun possession is therefore admissible to prove Midyett's participation in the alleged drug conspiracy.

The government, however, does not specify whether they seek to admit evidence of the alleged December 10 gun possession as direct evidence of the conspiracy or as 404(b) evidence of the conspiracy.  For the reasons set forth below, the court finds that the December 10 gun possession is admissible as direct evidence of the drug conspiracy charge, and thus, does not reach the question of whether the evidence is admissible as Rule 404(b) evidence of the drug conspiracy charge.

### 1. Admissibility As Direct Evidence Of The Charged Drug Conspiracy.

As stated above, in order for the December 10 gun possession to be admissible as direct evidence of the drug conspiracy it must (1) arise out of the same transaction or series of transactions as the drug conspiracy; (2) be

inextricably intertwined with the evidence regarding the drug conspiracy; or, (3) be necessary to complete the story of the drug conspiracy. *See Nektalov*, 325 F. Supp. 2d at 370. Moreover, where the government must prove a conspiracy existed, evidence of acts committed in furtherance of the conspiracy is not Rule 404(b) "other acts" evidence, but rather, it is direct evidence of the acts charged in the Indictment. *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992). If evidence is determined to be admissible as intrinsic or direct proof of the charged crimes, as distinguished from "other acts" under Rule 404(b), the government need not fulfill Rule 404(b)'s notice requirement, and the Court is not required to instruct the jury against making an improper inference of criminal propensity. *Nektalov,* 325 F. Supp. 2d at 372.

As part of the drug conspiracy, the government alleges that Midyett and co-conspirators "took part in several cocaine base transactions" in the Marcy Houses wherein confidential informants, cooperating witnesses, or undercover police officers purchased crack cocaine from Midyett and his co-conspirators on or around May 2006 through December 2007. (Gov. Reply at p. 3; Indictment, Count 1); *Midyett,* 2009 U.S. Dist. LEXIS 8865, at *15-16. It was during one of these "buy-and-bust" transactions on December 10, 2007 that an undercover police officer observed "the handle of a gun," *i.e.* the alleged .9 millimeter Smith and

Wesson firearm, on Midyett's person. *Id.;* (Gov. Reply at pp. 3,
20.)  In essence, the alleged December 10 gun possession, which
the government seeks to introduce as direct evidence of the
conspiracy, was observed during a drug transaction involving the
same drug trafficked in, occurring within the same time period
of, and at the same location of the alleged drug conspiracy.
Taken together with the acknowledged principle in this Circuit
that drug dealers are known to carry firearms to protect and
strengthen their narcotics-trafficking organization, (and thus,
firearms are considered "tools of the narcotics trade,") the
court finds that Midyett's alleged December 10 gun possession
was in clear furtherance of the charged drug conspiracy charged
in the Indictment. *See United States v. Van Putten*, 04-cr-803,
2005 U.S. Dist. LEXIS 4009, at *10, *14-15 (S.D.N.Y. Mar. 15,
2005).  Accordingly, the court finds the December 10 gun
possession to be intrinsically relevant to the drug conspiracy
charge.

However, before ruling on the admissibility of the
alleged December 10 gun possession as intrinsic proof of the
drug conspiracy charge, the court must determine whether the
evidence's probative value is outweighed by its prejudicial
effect.  Here, as previously stated, the alleged December 10 gun
possession is probative of Midyett's participation in the drug
conspiracy.  As the undercover observed the gun during a drug

transaction, which is alleged to be part and parcel of the charged drug conspiracy, the court finds that the probative value of the December 10 gun possession is not outweighed by any prejudicial effect, since the gun evidence at issue is not impermissibly more inflammatory or sensational than the charged conduct, *i.e.* Midyett's participation in the drug conspiracy. *Pitre,* 960 F.2d at 1120; *Livoti*, 196 F.3d at 322. Moreover, based on the overwhelming consensus in this Circuit that "handguns are tools of the narcotic trade," courts have uniformly held "that possible prejudice does not outweigh the relevance." *United States v. Viserto*, 596 F.2d 531, 537 (2d Cir. 1979); *King*, 1998 U.S. App. LEXIS 28265, at *6 ("district court did not abuse its discretion in holding that the firearms were relevant to the issues upon which [defendant] was tried and that . . . [their] probative weight was not overbalanced by the inflammatory tendency of the guns as evidence.") (quotations and citation omitted). Thus, the court finds that the December 10 gun possession is admissible as direct evidence of the charged drug conspiracy.

### III.   CONCLUSION

For the foregoing reasons, (1) the court denies the government's application to introduce any evidence relating to Midyett's November 30, 2000 arrest, including any evidence of the alleged altercation between Midyett and the arresting officer.  (2) The court denies without prejudice the government's application to introduce evidence under Rule 404(b) of the March 7, 2001 conviction for criminal possession in the third degree.  The government may renew its application for introduction of this evidence under Rule 404(b) at the conclusion of the defense's case if the defense raises any issues that may be properly rebutted by Rule 404(b) evidence. (3) The court denies without prejudice the government's application to introduce evidence of the alleged December 10 gun possession as 404(b) evidence of the charged July 3, 2007 felon-in-possession offense.  The government may renew its application to introduce the alleged December 10 gun possession as 404(b) evidence of the charged July 3, 2007 gun possession if the defense raises any issues that may be properly rebutted by Rule 404(b) evidence and the government presents evidence that the December 10 gun and the July 3 gun are the same gun or guns of a similar make and model.  (4) The court finds that evidence of the December 10, 2007 gun possession is not admissible as direct evidence of the July 3, 2007 felon-in-possession charge.  And

(5) the court grants the government's application to introduce

evidence of the December 10 gun possession as direct evidence of

the charged drug conspiracy.


**SO ORDERED.**

Dated: February 22, 2009
       Brooklyn, New York

                                    _____  /s/_____ _____
                                    KIYO A. MATSUMOTO
                                    United States District Judge
                                    Eastern District of New York