UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

UNITED STATES OF AMERICA

   -against-                          <u>MEMORANDUM & ORDER</u>

TYQUAN MIDYETT,                  07-CR-874 (KAM)

                Defendant.

----------------------------------X

MATSUMOTO, United States District Judge:

        Defendant Tyquan Midyett is charged in a February 2009 superseding indictment ("Indictment") with one count of conspiring, between May 2006 and December 2007, to distribute and possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(iii) (Count 1); three counts of distributing and possessing with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1), in, on and within 1,000 feet of (a) the real property comprising a private elementary and secondary school, and (b) the real property comprising a housing facility owned by a public housing authority in violation of 21 U.S.C. § 860(a) (Counts 2, 5 & 10); and one count of possessing a firearm after having previously been convicted of a crime punishable by a term of imprisonment exceeding one year in violation of 18 U.S.C. § 922(g)(1) (Count 11).

Pending before the court is Midyett's oral motion, first raised on February 23, 2009 following jury selection, to preclude the government from playing a portion of the December 7, 2006 video clip of an alleged drug transaction involving Midyett and a confidential informant ("CI") to the jury.[1] (Transcript of Jury Selection on February 23, 2009 ("2/23/09 Tr."), at pp. 281-83, 286-89; *see* Government Exhibit ("GX") 54, video clip 12.7.2006_CD9.wmv ("12/07/06 Vid. Clip"); GX 5A, Transcript of 12.7.2006_CD9.wmv video clip ("12/07/06 Vid. Tr."); GX 5, 12/07/2006 Video, including transaction between confidential informant and Midyett, in its entirety ("Complete 12/07/06 Vid."). Midyett seeks to preclude that portion of the video clip wherein the CI has an individual conversation with an unidentified female ("UF"). (2/23/09 Tr. at pp. 282-283.) Midyett identifies the conversation he seeks to preclude as

---

[1]      Although Midyett did not specifically move to preclude the corresponding objectionable sections of the 12/07/06 video clip from the 12/07/06 transcript and the complete 12/07/06 video, the court shall consider the motion as seeking to preclude the government from introducing the objectionable sections from all three sources, *i.e.*, the 12/07/06 video clip, the transcript and the complete video. (Transcript of Jury Selection on February 23, 2009 ("2/23/09 Tr."), at pp. 281-83, 286-89; *see* Government Exhibit ("GX") 54, video clip 12.7.2006_CD9.wmv ("12/07/06 Vid. Clip"); GX 5A, Transcript of 12.7.2006_CD9.wmv video clip ("12/07/06 Vid. Tr."); GX 5, 12/07/2006 Video, including transaction between confidential informant and Midyett, in its entirety ("Complete 12/07/06 Vid.")

spanning pages 2 through 6 of the transcript of the video clip. (2/23/09 Tr. at p. 283; *see* 12/07/06 Vid. Tr. at 2:3-6:20.)

The government opposed Midyett's oral motion at the time it was made on February 23, 2009 and, with the court's permission, submitted a written opposition on February 24, 2009. (Dkt. 277, Government's Letter, dated February 24, 2009, in Opposition to Defendant's February 23, 2009 Motions *In Limine* ("Gov. Opp."); 2/23/09 Tr. at pp. 286-287). After consideration of the parties' oral and written positions and for the reasons set forth herein, Midyett's motion is granted, except as outlined below.

## I.   BACKGROUND

The court assumes the parties' familiarity with the underlying facts of the instant case. *See United States v. Brown,* No. 07-cr-874, 2009 U.S. Dist. LEXIS 7777 (E.D.N.Y. Feb. 3, 2009); *United States v. Midyett,* No. 07-cr-874, 2009 U.S. Dist. LEXIS 8865 (E.D.N.Y. Feb. 6, 2009); *United States v. Midyett*, No. 07-cr-874, 2009 U.S. Dist. LEXIS 13326 (E.D.N.Y. Feb. 22, 2009). Accordingly, the court provides only a brief recitation of the facts pertinent to the instant motion.

As noted above, Midyett is charged, *inter alia*, with participating in a cocaine base distribution conspiracy (Indictment, Count 1), and distribution and possession with intent to distribute cocaine base near a school and public

3

housing facility on or about December 7, 2006 (Indictment, Count 2). The court assumes that the December 7, 2006 drug distribution charge is, at least, partially based on the December 7, 2006 video clip in which a CI allegedly purchases fourteen vials of crack cocaine for from Midyett in exchange for $42.00. (*See* 12/07/06 Vid. Clip; 12/07/06 Vid. Tr.; Complete 12/07/06 Vid.)

During the five minute and seven second video clip, it appears that the CI approaches Midyett, allegedly requests to purchase crack cocaine, and follows Midyett, at Midyett's direction, to building 113. (12/07/06 Vid. Clip at 0:00-1:06.) While the CI is following Midyett to the building, the UF approaches the CI and begins a conversation with the CI that lasts for most of the remainder of the video clip (the "CI-UF conversation"). (*Id.* at 1:07-5:07.) While the CI is speaking with the UF, they follow Midyett into building 113 at which time Midyett instructs the CI, who is with the UF, to wait for him at the bottom of the stairs, and ascends the stairs himself. (*Id.* at 1:07-2:00.) As the CI waits for Midyett, the CI and the UF continue to converse. (*Id.* at 2:01-4:26.) At the conclusion of the clip, the CI and the UF both ascend one flight of stairs to a landing where Midyett is waiting. Contrary to the government's assertions (Gov. Opp. at p. 2; 2/23/09 Tr. at p. 286), it is unclear from the video clip whether the UF purchases

crack cocaine from Midyett.  The CI appears to purchase fourteen

of what the government contends are vials of crack cocaine for

$42.00 from Midyett.  The UF continues to speak to the CI both

during his alleged drug purchase from Midyett, as well as

immediately afterward when she and the CI, who appears to be

counting his just-purchased vials, descend the stairs.

(12/07/06 Vid. Clip at 4:27-5:07.)

The substance of the CI-UF conversation appears, from

the video clip and transcript, to depict: (1) banter between

acquaintances who have not seen each other in awhile; (2) the UF

informing the CI that she had "gotten caught," and "if they

catch me again," she would "do one to three"; (3) the UF stating

that she is going "to smoke it here", the CI responding "If

you're going to smoke it here, be careful," and the UF's further

response that "You know I'm not going to"; (4) discussion about

where the UF lives, her marital state in response to the CI's

request for her number; and (5) recollections of previous

experiences shared by the CI and the UF, including the UF's

suggestion to the CI to "hit those stores

together"(collectively, the "Non-Drug Conversation").[2]  (*See*

_____

[2]    The court notes that, although the substance of the CI
and UF's conversation is not always entirely clear, the court
attempted to parse the meaning of the more vague portions of the
CI-UF conversation by viewing the complete video, approximately
twenty-five minutes, from the CI's session on December 7, 2006.
(*See* Complete 12/07/06 Vid.)

12/07/06 Vid. Clip; 12/07/06 Vid. Tr. at 2:3-3:24; *see generally* Complete 12/07/06 Vid.)

    The CI and the UF also appear to discuss the price Midyett was allegedly charging for the the crack cocaine.  As this portion of the conversation appears to be central to the government's opposition to Midyett's motion to preclude, the government's English translation follows:

        CI:  What, what does he have nickels or
        treys?
        UF1: Whom?
        CI:  This one.
        UF1: Treys, they're three bucks.
        CI:  Yeah? Oh . . .
        UF1: Three bucks.
        CI:  Uh-huh.  So . . .
        UF1: So that they won't take you for a fool.
        CI:  Yeah.  He told me they are nickels and,
        and nah, fuck that!
        UF1: No, they're three bucks.
        CI:  Yeah.
        UF1: Look at what I'm going to give him.
        CI:  Uh-huh.
        UF1: Three bucks.
        CI:  Um.  All right.
        UF1: [Voices overlap].  I'm going to give it
        to him first so that you can see.
        CI:  Uh-huh.
        UF1: So, that they won't take you for a
        fool.
        CI:  Uh-huh.  One . . .
        UF1: So, for 20 you can buy six.
        CI:  How many?
        UF1: Six for 20.
        CI:  [Voices overlap].  Six?
        UF1: Seven for 21.
        CI:  Seven for 21?
        UF1: Uh-huh.
        CI:  Okay, then.  I have 40.  So, then,
        seven, 14 times . . . 42, right?  Because
        it's seven for 21.

```
        UF1: Uh-huh.
        CI:  Okay, so then it's 14 for 42.
        UF1: Uh-huh.
        CI:  Okay. Okay, 14 then.
```

(hereinafter, the "Drug Conversation").[3]  (12/07/06 Vid. Tr. at

3:25-5:08; *see* Gov. Opp. at pp. 2-3; 12/07/06 Vid. Clip at 2:44-

3:33.)

## II.  DISCUSSION

        Midyett moves to preclude the entire CI-UF

conversation because "it is not 801(d)(2)(E) material."[4]

(2/23/09 Tr. at p. 283.)  The government orally opposed the

motion on February 23, 2009, asserting that the CI's

conversation with the UF, referring to the Drug Conversation,

was "central to understanding the context of [the] video [clip]"

because the UF "does[,in fact,] buy crack from Midyett" in the

video clip, and the UF informs the CI regarding the price

Midyett generally charges for crack cocaine.  According to the

government, this information demonstrates that Midyett is "out

---

[3]        With regard to the events depicted in the video and
set forth in the corresponding transcript, the court makes no
finding of fact except for purposes of this motion.  Factual
determinations are the sole province of the jury.

[4]        Fed. R. Evid. 801(d)(2)(E) provides in relevant part:

        A statement is not hearsay if . . . The
        statement is offered against a party and is
        . . . a statement by a coconspirator of a
        party during the course and in furtherance
        of the conspiracy.

there on a regular basis and part of this conspiracy as opposed

to just a random -- you know, a person who sells one or two

vials here and there." (2/23/09 Tr. at pp. 286-87.) Further,

in its written response, again referring only to the Drug

Conversation,[5] the government proposes that "the conversation

between the CI and the UF is [also] central to understanding why

Midyett and the CI agree on the $42 as the price for the

fourteen crack vials." (Gov. Opp. at p. 2.) Thus, the

government asserts, the UF's statements are "not hearsay" as

they are not offered for their truth, but rather "to put

Midyett's actions *in context* and make clear why Midyett and the

CI agreed on $42 as the price for the fourteen crack vials."

(*Id.* at 3) (emphasis added). Notably, the government does not

make the same argument regarding the CI's statements. Nor does

the government provide any other basis to admit the CI's out-of-

court statements. (*See* Gov. Opp. at pp. 2-3; 2/23/09 Tr. at pp.

286-87.)

     The court finds that neither the CI's statements nor

the UF's statements fall under any hearsay exception under

---

[5]        Although the government only refers to the Drug
Conversation in its oral argument and opposition papers, for
purposes of Midyett's motion to preclude the entire CI-UF
conversation at pages 2 through 6 of the transcript of the
12/07/06 video clip, the court will consider the government's
opposition to apply to the entire disputed CI-UF conversation,
including the Non-Drug Conversation and the Drug Conversation.
(*See* Gov. Opp. at pp. 2-3; 2/23/09 Tr. at 286-87.)

Federal Rule of Evidence ("FRE") 803.  Nor are they non-hearsay
prior statements of a witness pursuant to FRE 801(d)(1),
admissions of a party-opponent under 801(d)(2)(A), nor co-
conspirator statements in furtherance of a conspiracy under FRE
801(d)(2)(E).  Accordingly, the only avenue for admissibility of
the CI's statements is the same avenue being proffered by the
government for the UF's statements: the statements are being
proffered for the non-hearsay purposes of providing background
or context and not for the truth of the matters asserted.  The
court finds, however, that the CI-UF conversation is
inadmissible as (1) irrelevant (with regard to the Non-Drug
Conversation) to the issues being tried; (2) inadmissible
hearsay; and (3) any probative value is outweighed by the risk
of unfair prejudice.

> **A. The Non-Drug Conversation Is Irrelevant
>    Evidence And Inadmissible Under
>    Federal Rules of Evidence 401 and 402.**

The court finds that the Non-Drug Conversation between
the CI and the UF is not relevant evidence as defined by FRE
401.  The Non-Drug Conversation does not have "any tendency to
make the existence of any fact that is of consequence to the
determination of the action more probable or less probable that
it would be without the evidence."  Fed. R. Evid. 401.  Indeed,
the subject matter of the Non-Drug Conversation does not relate
to any of the issues being tried in the instant case; rather the

Non-Drug Conversation is simply, idle chit-chat.  Accordingly,

the Non-Drug Conversation is not relevant evidence and thus,

inadmissible pursuant to FRE 402.[6]

### B. The Drug Conversation Is Offered For The Truth Of The Matter Asserted And Is Inadmissible Hearsay.

The court also finds that the Drug Conversation

between the CI and the UF is inadmissible hearsay.  Indeed,

notwithstanding the government's bald contention that the Drug

Conversation is simply not hearsay, one of the non-hearsay

purposes for which the government proffers such evidence

supports the court's finding that the Drug Conversation is, in

fact, being offered for the truth of the matter asserted and

thus, is inadmissible hearsay.  Namely, the government asserts

that the Drug Conversation is being proffered to "make clear why

Midyett and the CI agree on $42 as the price for the fourteen

crack vials" (Gov. Opp. at p. 3).  Considering, however, that

the Drug Conversation proves the price charged by Midyett for

the crack cocaine he allegedly sold and for which he is charged

with distributing on December 7, 2006, the court is hard pressed

to accept the government's contention that the Drug Conversation

is not being offered for the truth of the matter asserted, *i.e.,*

that the UF was correct in informing the CI that Midyett charged

---

[6]        Federal Rule of Evidence 402 provides in relevant part
that "All relevant evidence is admissible . . . .  Evidence
which is not relevant is not admissible."  Fed. R. Evid. 402.

"three bucks" for each vial of crack cocaine.  (12/07/06 Vid.

Tr. at 3:25-5:08.)  Thus, as it is being offered for the truth

of the matter asserted, the Drug Conversation constitutes

hearsay and is inadmissible.  *See, e.g., United States v.*

*Pedroza*, 750 F.2d 187, 200 (2d Cir. 1984).

> ### C. The Government's Reliance On *United States v. Davis* Is Misplaced As The Principles Set Forth In *Davis* Are Wholly Inapplicable To The Instant Case.

Even assuming, *arguendo*, that the Drug Conversation is

not hearsay, before considering the Drug Conversation's

probative value versus prejudicial effect as set forth in

section II(D), *infra*, the court addresses a fundamental

misunderstanding by the government regarding the circumstances

that will justify the admission of the Drug Conversation for the

non-hearsay purpose of providing context and/or background.  The

government relies, to no avail, on *United States v. Davis*, 890

F.2d 1373 (7th Cir. 1989) as support for its contention that the

Drug Conversation is admissible for the non-hearsay purpose of

providing context for Midyett's actions and alleged

participation in a drug conspiracy.  *Davis*, however, is

inapposite.

Under *Davis*, in the Seventh Circuit (as in the Second

Circuit), "tape recorded conversations between a *defendant* and a

third party informant are admissible where the *defendant's*

*statements are offered as verbal acts or admissions* and the

third party's statements are necessary to place the *defendant's*
statement in *proper context*."  890 F.2d at 1380 (emphasis
added); *United States v. Barone*, 913 F.2d 46, 49 (2d Cir. 1990)
(the district court properly admitted evidence of an informant's
recorded statements during a conversation with the defendant
where they were presented not for the truth of the matter
asserted, but to establish a context to assist the jury with
understanding the recorded statements of the defendant, *i.e.*,
his admissions); *United States v. Walker*, No. 99-cr-379, 1999
U.S. Dist. LEXIS 15257, at *10 (S.D.N.Y. Sept. 29, 1999) (same).
*Davis* and similar cases note that when a defendant has an out-
of-court recorded conversation with a third party, and the
defendant's statements are already admissible as non-hearsay
defendant admissions under FRE 801(d)(2)(A), then the third
party's responses to the defendant during the recorded
conversation are admissible "as reciprocal and integrated
utterances between two parties for the limited purpose of
putting the response of the defendant in context of making them
intelligible to the jury and recognizable as admissions."
*Davis,* 890 F.2d at 1380 (quotations and citation omitted).
*United States v. Perez* has extended this principle to admit a
third party informant's statements made during a conversation
with a co-conspirator so long as the co-conspirator's statements
are admissible as non-hearsay under Rule 801(d)(2)(E).  *Perez,*

No. 05-cr-441, 2005 U.S. Dist. LEXIS 24444, at *5-7 (S.D.N.Y. Oct. 20, 2005).

Unlike in *Davis, Barone*, *Walker* or *Perez,* the CI-UF Drug Conversation does not include as a participant either a defendant or a co-conspirator, whose non-hearsay statements would be admissible as admissions under FRE 801(d)(2)(A) or as co-conspirators' statements in furtherance of a conspiracy under FRE 801(d)(2)(E), respectively. Moreover, neither the CI's nor the UF's statements during the Drug Conversation could be classified as non-hearsay under *Barone* and its progeny, irrespective of the fact that neither of the parties to the conversation is a defendant or co-conspirator. Indeed, instead of focusing on the identity of the parties in the conversation, *Perez* suggests that "what matters is whether the statements for which the informant's statements provide context are hearsay." 2005 U.S. Dist. LEXIS 24444, at *6. If the statements for which the informant's statements provide context are non-hearsay as defined in FRE 801(d), then the informant's statements are also non-hearsay and admissible to provide context. *Id*. In contrast, in the instant case, neither the CI's nor the UF's statements during the Drug Conversation qualify as non-hearsay under FRE 801(d). Accordingly, *Davis*, *Barone*, and their progeny are wholly inapplicable to the admissibility of the CI-UF conversation.

### D. The Drug Conversation Is Inadmissible For The Non-Hearsay Purpose Of Providing Context As Its Prejudicial Effect Outweighs Its Probative Value.

The appropriate analysis to determine the admissibility of out-of-court statements offered for a purpose other than the truth is grounded in Federal Rules of Evidence 401 and 403. *United States v. Paulino*, 445 F.3d 211, 217 (2d Cir. 2006); *United States v. Reyes*, 18 F.3d 65, 70 (2d Cir. 1994). Assuming, *arguendo*, that the Drug Conversation is not inadmissible hearsay, under FRE 401, the court must first determine whether the "non-hearsay purpose for which the evidence is sought to be justified is relevant, *i.e.*, . . . it supports or diminishes the likelihood of any fact 'that is of consequence to the determination of the action.'" *Reyes*, 18 F.3d at 70 (citing Fed. R. Evid. 401); *see Paulino*, 445 F.3d at 217. Second, under FRE 403, "the probative value of this evidence for its non-hearsay purpose [must be] outweighed by the danger of unfair prejudice resulting from the impermissible hearsay use of the declarant's statement." *Reyes,* 18 F.3d at 70; *Paulino*, 445 F.3d at 217; Fed. R. Evid. 403. Moreover, although the district courts have broad discretion in their rulings regarding the relevancy and unfair prejudice of the proffered evidence, the Second Circuit has "identified 'two common scenarios' in which evidence offered not for its truth may appropriately be received as relevant background: (1) to

"'clarify noncontroversial matters without causing unfair prejudice on significant disputed matters,'" and (2) as "'appropriate rebuttal to initiatives launched by the defendant.'" *Paulino*, 445 F.3d at 217. Neither circumstance obtains here.

In determining the relevance and importance of such evidence, courts have asked:

> (i) Does the background . . . evidence contribute to the proof of the defendant's guilt? . . . (ii) If so, how important is it to the jury's understanding of the issues? (iii) Can the needed explanation of background . . . be adequately communicated by other less prejudicial evidence or by instructions? (iv) Has the defendant engaged in a tactic that justifiably opens the door to such evidence to avoid prejudice to the Government?

*Reyes*, 18 F.3d at 70. Furthermore, to assess the potential for unfair prejudice by the introduction of this testimony, courts have considered the following factors:

> (v) Does the declaration address an important disputed issue in the trial? . . . Is the same information shown by other uncontested evidence? . . . (vi) Was the statement made by a knowledgeable declarant so that it is likely to be credited by the jury? (vii) Will the declarant testify at trial, thus rendering him available for cross-examination? If so, will he testify to the same effect as the out-of-court statement? Is the out-of-court statement admissible in any event as a prior consistent, or inconsistent, statement? (viii) Can curative or limiting instructions

> effectively protect against misuse or
> prejudice?

*Id.* at 70-1.  In this case, virtually every variable weighs

against the admission of the evidence of the CI-UF Drug

conversation.

The non-hearsay purpose proffered by the government to

introduce the Drug Conversation is to put "Midyett's actions in

context." (Gov. Opp. at p. 3.)  Although the government does

not specify which of Midyett's actions the Drug Conversation

will put into context, the government asserts that such evidence

will (1) demonstrate that Midyett is "out there on a regular

basis and part of this conspiracy as opposed to just a random --

you know, a person who sells one or two vials here and there,"

and (2) "make clear why Midyett and the CI agree on $42 as the

price for the fourteen crack vials." (2/23/09 Tr. at pp. 286-7;

Gov. Opp. at pp. 2-3.)  The court finds that the government's

proffered non-hearsay purpose for the Drug Conversation is only

minimally relevant with respect to Midyett's drug conspiracy

charge, but is relevant to the charge against Midyett for drug

distribution on December 7, 2006.

"The only elements of a . . . narcotics conspiracy

offense are the existence of a conspiracy and the defendant's

willful joining it." *United States v. Torres*, No. 1:07-cr-15,

2008 U.S. Dist. LEXIS 81527, at *4 (N.D.N.Y. Oct. 14, 2008)

(citing *United States v. Story,* 891 F.2d 988, 992 (2d Cir.

1989)). Assuming, *arguendo,* that the CI-UF Drug Conversation

does provide context for the price Midyett charged for crack

cocaine on December 7, 2006 and for the alleged fact that

Midyett was not an occasional and random drug dealer, the court

finds that this context evidence is minimally relevant to the

elements of the conspiracy charge. *See, e.g., Reyes*, 18 F.3d at

71. Such context evidence would not contribute to proof of

Midyett's guilt for the conspiracy charge; namely, that a drug

conspiracy existed and that Midyett knew of and participated in

the conspiracy.[7]

The outcome differs with respect to the charge against

Midyett for drug distribution on December 7, 2006. The elements

of an offense for drug distribution are the knowing possession

of a quantity of drugs with the intent to distribute them.

*Morales v. United States*, No. 01-cv-7194, 2002 U.S. Dist. LEXIS

7321, at *14 (S.D.N.Y. Apr. 25, 2002) (citing *United States v.*

*Martinez*, 44 F.3d 148, 151 (2d Cir.), *vacated on other grounds*,

54 F.3d 1040 (2d Cir.), *cert. denied*, 516 U.S. 1001 (1995)).

Here, the court finds that the proffered non-hearsay purpose of

the Drug Conversation, *i.e.*, to provide context for the price

---

[7]     As the court determines that there is no legitimate
need for such background and/or context with respect to the drug
conspiracy charge, the statements are, in reality, being offered
to prove the truth of the matter asserted, and is thus,
inadmissible hearsay.

Midyett charged for crack cocaine and the alleged fact that
Midyett was not an occasional and random drug dealer, will
contribute to the proof of whether Midyett knowingly possessed
with the intent to distribute crack cocaine on December 7, 2006.
Although such context evidence may be helpful to the jury's
understanding of the issues, the court finds that the "needed
explanation of background" could be adequately communicated with
other less prejudicial evidence, *e.g.*, the remainder of the
video clip depicting what appears to be Midyett's sale of crack
cocaine to the CI, the CI's testimony, and the testimony of
other government witnesses. *See Reyes*, 18 F.3d at 70. Thus,
although relevant, the court finds that the Drug Conversation is
not so relevant as to render such evidence necessary to the
government's case.

The court next weighs its finding of relevance against
the risk for unfair prejudice resulting from the admission of
the statements made by the CF and the UF during the Drug
Conversation and finds that the risk of prejudice posed
substantially outweighs the probative value of such evidence.
The potential for prejudice, if these statements were admitted
at trial, is great because: (1) the Drug Conversation relates to
important issues in dispute, *i.e.*, whether Midyett deals crack
cocaine; (2) although the CI may testify at trial, the UF, whose
statements are more substantive with respect to Midyett's

alleged drug dealing than the CI's, is not anticipated to testify based on the information in the record (specifically, the government's witness list); and (3) a curative and limiting instruction would have little to no effect in eliminating the risk that the jury will improperly consider the Drug Conversation for its truth, given that the Drug Conversation shows that Midyett was selling crack cocaine for a certain price. *Cf. Reyes*, 18 F.3d at 70-2.

Accordingly, as the risk of unfair prejudice significantly outweighs the probative value of the Drug Conversation for the proffered non-hearsay purpose of providing context, and as the court has found that the Non-Drug Conversation is inadmissible as irrelevant evidence, the court grants Midyett's motion to preclude the government from introducing (in the video clip, in the complete video, and in the transcript,) the Non-Drug Conversation and, except as provided herein, specific portions of the CI-UF Drug Conversation, taking into account some practical and technical considerations. The court notes that limited portions of the CI-UF conversation overlap with segments of the video where Midyett is present and/or where Midyett is speaking. Midyett's statements on the video, however, are admissible as defendant admissions under Rule 801(d)(2)(A). Thus, as defense counsel represented at the February 23, 2009 conference following the

jury selection that he could "live with" "little snippets" of inconsequential conversation between the CI and others (2/23/09 Tr. at p. 282,) the court rules as follows: (1) The government shall remove the audio from 1:07 through 1:49 of the 12/07/06 video clip (GX 54, 12.7.2006_CD9.wmv); the government shall remove the audio from the corresponding section from the complete 12/07/06 video (GX 5), *i.e.*, from 14:27:54 through 14:28:38; and the government shall redact the corresponding lines from the transcript (GX 5A), *i.e.*, lines 2:03 through 2:21. (2) The government shall remove the audio from 2:01 through 4:26 of the 12/07/06 video clip (GX 54, 12.7.2006_CD9.wmv); the government shall remove the audio from the corresponding section from the complete 12/07/06 video (GX 5), *i.e.*, 14:28:38 through 14:30:57; and the government shall redact the corresponding lines from the transcript (GX 5A), *i.e.*, lines 3:01 through 6:10. (3) The remaining audio and visual portions of the 12/07/06 video clip (GX 54, 12.7.2006_CD9.wmv) and the corresponding sections from the complete 12/07/06 video (GX5) and the transcript (GX 5A) shall remain intact and may be played for the jury.[8] (4) The

---

[8]     Although not in dispute, the court notes that the CI's statements to Midyett during his conversation with Midyett are admissible non-hearsay as Midyett's statements are non-hearsay defendant admissions and the CI's statements are simply being offered to place Midyett's admissions in proper context. *See*

government shall review its exhibits and if copies of the same

video clips or transcripts exist in other exhibits, the

government shall inform the court and shall redact the

corresponding lines or remove the audio from the corresponding

portions of the video in the other exhibits consistent with this

opinion.

### III.    CONCLUSION

For the foregoing reasons, the court grants Midyett's

motion to preclude the government from introducing (in the video

clip, in the complete video, and in the transcript,) the Non-

Drug Conversation in its entirety, and specific sections of the

CI-UF Drug Conversation within the practical and technical

considerations delineated above.


**SO ORDERED.**

Dated: March 1, 2009
       Brooklyn, New York

_____    /s/_____

KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York

---

*Barone*, 913 F.2d at 49; *Walker*, 1999 U.S. Dist. LEXIS 15257, at
*10.