UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X

UNITED STATES OF AMERICA

    -against-                        **MEMORANDUM & ORDER**

TYQUAN MIDYETT,                      07-CR-874 (KAM)

          Defendant.

-----------------------------------X

MATSUMOTO, United States District Judge:

         On March 11, 2009, defendant Tyquan Midyett ("Midyett"

or "defendant") was convicted by a jury of Counts 1, 2, 5, 10

and 11 of an eleven-count, third superseding indictment.[1]  In

---

[1] Count One charges that between May 2006 and December 2007,
defendant and others conspired to distribute and possessed with
the intent to distribute fifty grams or more of cocaine base, in
violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 864 (the
"conspiracy charge").  Count Two charges that on December 7,
2006, defendant and others distributed and possessed with the
intent to distribute cocaine base within 1,000 feet of a private
elementary and secondary school, Bais Rachel D'Satmar, and a
public housing facility, the Marcy Houses, in violation of 21
U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 860(a).  Count Five
charges that on January 9, 2007, defendant and others
distributed and possessed with the intent to distribute five
grams or more of cocaine base within 1,000 feet of a private
elementary and secondary school and a public housing facility,
in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 860(a).
Count Ten charges that on December 10, 2007, defendant and
others distributed and possessed with the intent to distribute
five grams or more or cocaine base within 1,000 feet of a
private elementary and secondary school and a public housing
facility, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C)
and 860(a).  Count Eleven charges that on July 3, 2007,
defendant, having previously been convicted of a crime
punishable by a term of imprisonment exceeding one year,
possessed a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and

anticipation of his sentencing scheduled for October 14, 2009, defendant filed a handwritten, *pro se* memorandum dated August 26, 2009, in which he asserts, *inter alia*, that defense counsel failed to advise him accurately of the government's plea offer and the consequences of rejecting the plea offer and proceeding to trial. (*See* Doc. No. 422, Defendant's Sentencing Memorandum dated Aug. 26, 2009 ("Def. Mem.") at 3.) Defendant asserts that his attorneys' alleged failures have exposed him to a longer sentence than he might otherwise be exposed had he pled guilty in advance of trial. Defendant thus requests "a meaningful opportunity to accept responsibility and receive the benefit therefrom." (*Id.* at 4.)

On October 28, 2009, the court held an evidentiary hearing to explore the pre-trial discussions between defendant and his former counsel, Joel S. Cohen, Esq. and Martin J. Siegel, Esq., regarding the circumstances surrounding the parties' plea negotiations, the advisability of a plea and the potential consequences of proceeding to trial. (*See generally*, Transcript of Proceedings held on Oct. 28, 2009 ("Tr.").) At the October 28, 2009 evidentiary hearing, the court heard the testimony of defendant, Cohen and Siegel, after defendant waived

---

924(a)(2). (*See* Doc. No. 241, Redacted Superseding Indictment, filed on Feb. 9, 2009.)

his privileged communications with counsel.[2]  (*See id.* at 2-3.)

Having considered the appropriate burdens of
production and proof, the testimony of witnesses, the hearing
exhibits, the parties' written submissions, and having resolved
issues of credibility, the court denies defendant's motion in
its entirety.  The court sets forth below the findings of fact
and conclusions of law upon which this determination is based.

## FINDINGS OF FACT

On December 7, 2007, defendant and others were
indicted for conspiring to distribute and possess with the
intent to distribute 50 grams or more of a substance containing
cocaine base, in violation for 21 U.S.C. §§ 841(b)(1)(A)(iii)
and 846, and distribution of cocaine base within 1,000 feet of a
private elementary and secondary school and a public housing
facility, in violation of 21 U.S.C. §§ 841(a)(1) and
841(b)(1)(C).  The conspiracy charge in Count One of the
indictment and subsequent superseding indictment carries a
mandatory minimum term of 10 years' imprisonment.  Additionally,
because the defendant had previously been convicted of a felony

---

[2] At the October 28, 2009 hearing, the government proffered as
evidence the declarations of Messrs. Cohen and Siegel.  (*See* Tr.
at 6-7.)  Although the declarations were signed after defendant
waived his attorney-client privilege, they were prepared by the
government's counsel in advance of the hearing and contain very
specific information concerning discussions between defendant
and his counsel.  (*See id.* at 7-9).  The declarations were
admitted into evidence, but the court does not rely on them in
reaching a decision on defendant's instant motion.

3

drug trafficking offense, he is subject to a 20-year mandatory minimum term of imprisonment because the government filed a prior felony information pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851 after defendant declined to plead guilty.[3]

Defendant was represented by Joel Cohen from his arraignment on December 13, 2007 until July 7, 2008. (*See* Tr. at 53; *see also* Doc. No. 7, Minute Entry for Arraignment on Dec. 12, 2007; Doc. No. 105, Minute Entry for Pretrial Conference on July 7, 2008.) During that period, Mr. Cohen had "between three and five meetings" with defendant at the Metropolitan Detention Center ("MDC") in Brooklyn, New York and had limited telephone contact with defendant. (Tr. at 53.)

---

[3] A conviction for conspiracy to distribute and possess with the intent to distribute 50 grams or more of a substance containing cocaine base, in violation of 21 U.S.C. §§ 841(b)(1)(A)(iii), carries a 10-year mandatory minimum term of imprisonment. If a violation of § 841(b)(1)(A) occurs "after a prior conviction for a felony drug offense has become final," the mandatory minimum is twenty years' imprisonment. *Id.* Under 21 U.S.C. § 851, "[n]o person who stands convicted of an offense under [the Controlled Substances Act] shall be sentenced to increased punishment by reason of one or more prior convictions, unless, before trial, or before entry of a plea of guilty, the United States attorney files an information with the court . . . stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a)(1). Because defendant was charged with violating sections of the Controlled Substances Act, the government may subject defendant to the enhanced penalties in 21 U.S.C. § 841(b)(1)(A) by filing a § 851 prior felony information before defendant's trial or before the entry of a guilty plea. The decision of whether to file a § 851 information is within the discretion of the United States attorney. *See United States v. LaBonte*, 520 U.S. 751, 762 (1997); *United States v. Sanchez*, 517 F.3d 651, 669-670 (2d Cir. 2008).

Under cover of letter dated March 27, 2008, the
government provided Mr. Cohen with a proposed plea agreement to
the conspiracy count, subjecting defendant to a 10-year
mandatory minimum term of incarceration. (*Id.* at 54-55; *see
also* Gov. Ex. 3, Letter dated Mar. 27, 2008 and proposed Plea
Agreement.) Although Mr. Cohen did not recall whether he
provided defendant with a copy of the government's March 27,
2008 cover letter or proposed plea agreement, Mr. Cohen credibly
testified that he communicated and explained the government's
plea offer to defendant and explained the ramifications "in the
event the government filed a second felony information" pursuant
to 21 U.S.C. 851. (*See* Tr. at 56-57.) Specifically, Mr. Cohen
testified that he explained to defendant that, if defendant
chose not to accept the government's offer and plead guilty to
the 10-year mandatory minimum, the government would file a prior
felony information, subjecting defendant to a mandatory 20-year
term of incarceration. (*Id.* at 59, 61.) Mr. Cohen also
testified that he specifically advised defendant of the
government's 10-year plea offer each time he met with defendant.
(*Id.* at 61.)

Moreover, although defendant, Mr. Cohen and the
government discussed the possibility of a sentence below the
ten-year mandatory minimum, Mr. Cohen testified that "the
government made it pretty clear that there was no way, other

5

than through cooperation, that [defendant] would have an opportunity to get less than ten years." (*Id.* at 61.) Mr. Cohen credibly testified that defendant "wasn't interested at all in cooperating. He had no interest in cooperating." (*Id.* at 58.) Indeed, defendant acknowledged that Mr. Cohen discussed with him the "possibility of pleading guilty . . . ." (*Id.* at 20.) Defendant testified that "Mr. Cohen informed me that the government said that I played a minimal role" in the offense but that to receive "five to 40" years' imprisonment, defendant would have to "play ball with the government[,]" which defendant testified he was not willing to do because he had "no information to give." (*Id.* at 20-21.) Defendant further testified that it was "[v]ery much possible" that he would have pled guilty to an offer of five years' imprisonment on the conspiracy count. (*Id.* at 23.)

Mr. Cohen further testified that in or around March or April 2008, he reviewed some of the government's evidence, which he then discussed with defendant. Specifically, Mr. Cohen reviewed "some DVDs . . . that purported to show a drug transaction that Mr. Midyett was involved in." (*Id.* at 63.) Mr. Cohen testified that "when I saw [the DVDs] there was no doubt in my mind that the person pictured was Mr. Midyett and that he was selling drugs. There was very clear audio." (*Id.*) Mr. Cohen testified that he "told [defendant] that I didn't

think he could walk away from a conviction on the substantive count at all because it was evident that the person on the video was [the defendant] and that he was selling drugs . . . ." (*Id.* at 64.) Defendant, by contrast, did not put forth any evidence contradicting Mr. Cohen's testimony regarding Cohen's analysis of and advice concerning the government's proof. (*See id.* at 46.)

By letter dated June 24, 2008, the government formally advised Mr. Cohen that, if defendant "did not enter a plea of guilty on or before June 30, 2008, the government intends to file a prior felony information[,]" which "would have the effect of doubling any mandatory minimum sentence to which your client is subject."[4] (Gov. Ex. 2.) Although Mr. Cohen did not recall showing defendant a copy of the government's June 24, 2008 letter, Mr. Cohen testified that he discussed with defendant "the ramifications . . . of taking this plea, and mindful of his [defendant's] record, what the ramifications would be in the event that the government filed a second felony information." (Tr. at 56-57.) Specifically, Mr. Cohen advised defendant that

---

[4] The United States Attorneys' Manual (the "Manual") § 9-27 provides, in relevant part, that "[e]very prosecutor should regard the filing of an information under 21 U.S.C. § 851 concerning prior convictions as equivalent to the filing of charges." In turn, the Manual provides that "[c]harges should not be filed simply to exert leverage to induce a plea . . . ." Manual § 9-27.300 (available at http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/27mcrm.htm) (last visited Feb. 2, 2010).

the effect of the prior felony information would be that, "if he [defendant] were convicted on the conspiracy [count,] . . . instead of having a ten-year minimum, it would be 20." (*Id.* at 60.)

Defendant testified that Mr. Cohen neither showed him the plea agreement nor advised him that the mandatory sentence would be doubled if he did not plead guilty. (*Id.* at 16.) Defendant further testified that he "never had a conversation about any minimums." (*Id.* at 19.) Defendant's Declaration, submitted in anticipation of the October 28, 2009 fact-finding hearing (Gov. Ex. 5), is silent with respect to defendant's conversations with Mr. Cohen.

Based on Mr. Cohen's review of the evidence, the strength of the government's case, the possibility of a 20-year mandatory sentence, and defendant's desire to be reunited with his family, Cohen recommended to defendant that he "take the ten years and avoid doing another ten." (*Id.* at 63, 68, 70.) Mr. Cohen testified that he discussed with defendant the strengths of the government's evidence and "talked to [defendant] about how foolish I thought it would be based on my escalating belief that he would be convicted if he risked going to trial." (*Id.* at 70.) Mr. Cohen testified that he "really almost begged him [defendant] not to risk throwing away ten years in light of what I thought was a pretty certain conviction." (*Id.* at 71.)

According to Mr. Cohen, despite his advice, defendant declined to plead guilty. (*Id.* at 70-71.)  Mr. Cohen testified that defendant told him that he believed he was not guilty of the conspiracy count because defendant had a "strong belief" that he acted as a "lone operator[.]"  (*Id.* at 71.)  Mr. Cohen "explain[ed] to [defendant] how easy it is to be charged and convicted of conspiracy . . . . and told him that I thought that there was a good chance that he would be [convicted]."  (*Id.*)  Defendant testified that he and Mr. Cohen discussed "conspiracy in general."  (*See id.* at 19.)  The court finds Mr. Cohen's foregoing testimony credible.

At approximately the same time, relations between defendant and Mr. Cohen broke down.  Mr. Cohen testified that during their last meeting, defendant "said something to me about his believing that I was working with the government."  (*Id.* at 62.)  Indeed, defendant testified that he believed that Mr. Cohen did not have defendant's "best interests at heart[.]" (*See id.* at 34.)  Consequently, defendant requested new counsel. (*See id.*)  On July 8, 2008, defendant's motion for new counsel was granted and Martin J. Siegel, Esq. was appointed to represent defendant.  (*See* Doc. Nos. 96, 105.)  According to the government, "because of the likelihood of appointment of new counsel, and in the interest of providing the defendant with an opportunity to plead guilty to the 10-year offer, the government

orally extended the June 30 deadline until July 15, 2008."
(Doc. No. 449, Post-hearing Letter Memorandum of Law dated Dec.
3, 2009 ("Gov. Mem.") at 3; *see also* Gov. Ex. 4, Transcript of
Status Conference on July 15, 2008, at 12-13.)

Following his appointment as counsel, Mr. Siegel met
with defendant on three occasions between July 8, 2008 and July
15, 2008. (*See id.* at 83.) Mr. Siegel testified that during
each of their meetings, he discussed with defendant a plea of
guilty to ten years and the consequences of proceeding to trial
if the government filed a prior felony information. (*Id.* at 85-
86.) Mr. Siegel testified that based on a review of his
contemporaneous handwritten notes and his "norma[l]" practice,
he advised defendant that the "potential filing of the 851
felony [information] . . . would then double the sentence."
(*Id.* at 77.) Siegel testified that his notes from a July 14,
2008 meeting with defendant reflect that he advised defendant
"of the ten-year mandatory minimum. If he refuses, they will
then file an 851 prior felony [information] and he would then
face [a] mandatory minimum of twenty years." (*Id.* at 78; *see*
Court Exs. 1, 3, Handwritten Notes.) Mr. Siegel did not recall
whether he showed defendant a copy of the proposed plea
agreement or the correspondence between the government and Mr.
Cohen. (*Id.* at 77-78.) The court finds Mr. Siegel's foregoing
testimony credible.

Defendant testified that Mr. Siegel did not advise him that the mandatory minimum sentence would be doubled to 20 years if he did not plead guilty. (*See id.* at 15.)  According to defendant, Mr. Siegel "just mentioned the government had an offer.  I asked him 'what was the offer,' and he said '[t]wenty years.'  Twenty years.  So, 'what happens if I go to trial and lose?'  He [Siegel] said, 'Twenty years.'  So I said, 'I might as well go to trial.'" (*Id.*)  Defendant testified that he was not shown a copy of the proposed plea agreement (*id.* at 16), and that Mr. Siegel did not "mention . . . anything about an 851 enhancement" on July 15, 2008 (*see id.* at 14).  Defendant additionally testified that he was "never" aware that the government had offered pleading to a mandatory minimum of 10 years' imprisonment.  (*See id.* at 39.)

Mr. Siegel credibly testified that he discussed with defendant the strengths and weaknesses of his case and the possibility of being convicted at trial. (*See id.* at 89.)  Mr. Siegel testified that after reviewing video recordings of the defendant engaged in narcotics transactions in the courtyard of a housing project, he advised defendant that "if you go to trial . . . with this evidence . . . the probability is you're going to be convicted." (*Id.* at 89-90.)  Mr. Siegel therefore advised defendant to plead guilty. (*Id.* at 90.)  Siegel testified that he explained to defendant the benefit of accepting the

government's 10-year plea offer in elementary terms: "if you accept the ten-year plea, . . . that means you're going to do eight and a half years, with time off for good behavior. . . . But if you don't take it and you are convicted, . . . you have to wait another ten years before you can leave." (*Id.*)

Significantly, defendant did not refute Mr. Siegel's testimony that Siegel discussed with defendant the strength of the government's evidence and the probability that he would be convicted. When asked whether Cohen or Siegel ever discussed the "strength[s] and weaknesses of the [government's] case, defendant testified "Not really. Mr. Siegel stated to me that, again, that there are cases that were triable and cases not triable, and this was not a triable case. And at that time I told him that I didn't want him representing me anymore . . . ." (*Id.* at 46.)

Mr. Siegel further credibly testified that despite his advice, defendant did not want to accept the plea offer of a mandatory 10-year term of imprisonment because "[h]e wanted a better plea offer" and "said that he was not part of the conspiracy, that he was an independent drug dealer, and that he had nothing to do with being part of the conspiracy . . . ." (*Id.* at 86; *see also id.* at 91.) According to Siegel, defendant was "adamant" in his refusal to plead guilty. (*Id.*) In this regard, Mr. Siegel's testimony corroborates Mr. Cohen's

testimony concerning defendant's belief he was not guilty of the conspiracy and acted as a "lone operator[.]" (*See id.* at 71.)

During a July 15, 2008 status conference at which defendant was present, Mr. Siegel explained to the court that defendant wished to proceed to trial. (*See* Gov. Ex. 4 at 12-13.)  Mr. Siegel stated that,

> When I entered the case, I had plea discussions with Ms. Latif, the [A]ssistant [United States Attorney], and a plea offer, if the defendant accepted by today with a plea to a ten year mandatory minimum count.  The government has advised me that if the defendant rejects that offer, they will be filing an 851 notice indicating a prior felony offense plus additional charges.  I've advised the defendant of this and the defendant has rejected the offer and wishes to go to trial.

(*Id.*)  Defendant testified that he did not recall hearing any reference to a prior felony information "or anything like that" at the July 15, 2008 status conference.  (*Id.* at 17.)  Rather, defendant testified that he recalled hearing a reference to "additional charges and such like that."  (*Id.*)

During the October 28, 2009 evidentiary hearing, Mr. Siegel explained that his above statement at the July 15, 2008 status conference did not reflect the entirety of his conversations with defendant.  Mr. Siegel testified that he advised defendant that,

> in the event he rejected the ten-year mandatory
> minimum and the government filed an 851 notice,
> then his mandatory minimum sentence would be
> doubled.  Instead of being a mandatory minimum of
> ten years, it would be a mandatory minimum of
> twenty years.

(Tr. at 85.)  After being advised that defendant had rejected

the government's plea offer, the government filed a prior felony

information in open court.  (*See* Doc. No. 119, Minute Entry for

July 15, 2008 Status Conference; *see also* Doc. No. 106, Prior

Felony Information.)

Defendant testified that had he known the government

had offered a 10-year plea deal and that he faced a 20-year

mandatory minimum if convicted after trial, he would have

accepted the 10-year sentence "[a]s opposed to getting 20 years

. . . ." (*See id.* at 24.)  The court, however, credits the

testimony of Messrs. Cohen and Siegel regarding their

discussions with defendant about the plea offer and the

consequences of proceeding to trial, based on the exhibits,

court conference transcripts and counsel's contemporaneous

notes.

## CONCLUSIONS OF LAW

Defendant's *pro se* motion requests "the opportunity to

accept responsibility" and "receive the benefit therefrom"

because he was allegedly not advised of the 10-year plea offer

and the consequences of proceeding to trial. (*See* Def. Mem. at

14

3-4.)  The court accepts the government's characterization of

defendant's motion as an assertion that he was denied

constitutionally effective assistance of counsel with respect to

the Government's plea offer.[5]  (Gov. Mem. at 6.)  *See Burgos v.*

*Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a *pro se*

litigant's] supporting papers liberally, and will interpret them

to raise the strongest arguments that they suggest."); *see also*

*United States v. Morgan*, No. 08-CR-208, 2009 U.S. Dist. LEXIS

99830, at *22-25 (N.D.N.Y. Oct. 27, 2009) (where defendant's *pro*

*se* post-conviction motion alleged that his lawyer "did not cover

all [the] issues" at trial and "did not have enough time to

properly prepare [a] defense[,]" the court construed defendant's

allegation as an ineffective assistance of counsel claim, and

denied a new trial on that basis).

        As the government correctly points out, to succeed on

a claim of ineffective assistance of counsel, a defendant must

(i) overcome a "strong presumption" that his counsel's conduct

was reasonable and demonstrate that the representation "fell

below an objective standard of reasonableness" under "prevailing

professional norms," and (ii) "affirmatively prove prejudice" by

showing that "but for counsel's unprofessional errors, the

result of the proceeding would have been different."  *Strickland*

---

[5] Defendant's counsel does not dispute the government's
characterization or the governing standards set forth in the
government's submission.  (*See* Gov. Mem. at 6.)

*v. Washington*, 466 U.S. 668, 687-688, 693-694 (1984); *accord United States v. Pitcher*, 559 F.3d 120, 123 (2d Cir. 2009). (*See* Gov. Mem. at 6.)  "A court can address these issues in either order; thus, if it is easier to determine that the defendant has failed to show prejudice, that determination is sufficient to dispose of the ineffective-assistance claim." *United States v. Castro*, No. 04-CR-664, 2009 U.S. Dist. LEXIS 19507, at *2 (S.D.N.Y. Feb. 11, 2009) (citing *Strickland*, 466 U.S. at 697).

## A. Counsel's Performance

"It is well settled that a defendant's Sixth Amendment right to counsel extends to plea negotiations."  *Pitcher*, 559 F.3d at 123 (quoting *Davis v. Greiner*, 428 F.3d 81, 87 (2d Cir. 2005)).  In the context of a plea offer, "counsel must communicate to the defendant the terms of the plea offer . . . and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed . . . ." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000) (finding defense counsel constitutionally effective where counsel had substantially communicated to defendant the plea offer and adequately informed defendant of the consequences of pleading guilty and the strengths of the government's case); *see also* Model Rule of Professional Conduct 1.4(b) (a "lawyer shall

explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."). "[K]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998) (citation and internal quotation marks omitted).

"[A]n attorney's failure to adequately advise his client about the consequences that attach to a guilty plea offer may constitute constitutionally deficient performance. *Diaz v. United States*, No. 08-CV-1147, 2009 U.S. Dist. LEXIS 66367, at *9 (S.D.N.Y. July 27, 2009) (citing *Gordon*, 156 F.3d at 380) (defendant was denied effective assistance of counsel during plea negotiations when defense counsel "grossly underestimate[ed]" defendant's potential maximum sentence)). Indeed, the Second Circuit recently observed that "there may perhaps be circumstances where the disparity between the sentence offered under a plea agreement and the sentencing exposure in the absence of such an agreement (factoring in both the probable sentence and the likelihood of conviction) might require counsel to give advice about the benefits and risks of accepting or not accepting a plea offer beyond merely stating the sentencing exposure . . . ." *Carrion v. Smith*, 549 F.3d 583, 590 (2d Cir. 2008) ("*Carrion I*"); *see also Carrion v.*

*Smith*, 644 F. Supp. 2d 452, 467 (S.D.N.Y. 2009) ("*Carrion II*")
("a lawyer unquestionably has a duty to inform his client of the
sentencing exposure he faces if he accepts the plea offer and if
he does not.").

Moreover, the Second Circuit has observed that the
Model Rules of Professional Conduct ("Model Rules") provide that
"the ultimate decision whether to plead guilty must be made by
the defendant." *Purdy*, 208 F.3d at 45 (citing Model Rule
1.2(a)). Indeed, the Second Circuit has observed that with
respect to a plea offer, "counsel [has] an affirmative duty to
avoid exerting undue influence on the accused's decision and to
ensure that the decision . . . is ultimately made by the
defendant." *Id.* (citations and internal quotation marks
omitted).

Here, defendant testified that neither Cohen nor
Siegel ever showed him a copy of or otherwise informed him of
the government's 10-year plea offer. (*See* Tr. at 15-17.)
Defendant testified that Mr. Cohen had advised him that the
government "was willing" to offer a 5-year minimum contingent
upon defendant's cooperation. (*See id.* at 17.) Defendant
further testified that Mr. Cohen never advised him that the
mandatory minimum would double from 10 to 20 years if defendant
rejected the plea offer, the government filed a prior felony
information pursuant to 21 U.S.C. § 851 and defendant was

convicted at trial. (*See id.* at 17-18.) Defendant testified that Mr. Siegel advised him that the government had offered a 20-year mandatory minimum whether he pled guilty or proceeded to trial. (*See id.* at 15-16.)

Notwithstanding defendant's testimony, the weight of the credible evidence does not support a finding that Mr. Cohen's representation of defendant was deficient in any respect. Although Mr. Cohen did not recall showing defendant a copy of the proposed plea agreement or any correspondence received from the government, Cohen credibly testified that he informed defendant on multiple occasions of the terms of the 10-year plea offer, the consequences of rejecting the offer and the strengths of the government's evidence. Specifically, Mr. Cohen testified that he advised defendant that the effect of the prior felony information would be that, "if he [defendant] were convicted on the conspiracy [count,] . . . instead of having a ten-year minimum, it would be 20." (*See* Tr. at 60.) Moreover, after reviewing the government's video evidence of defendant engaged in drug transactions, Mr. Cohen advised defendant of his belief that defendant was likely to be convicted if he proceeded to trial. (*See* Tr. at 64, 70.) Indeed, Mr. Cohen specifically recalled that he "almost begged" defendant to accept the 10-year mandatory minimum rather than face a 20-year prison term. (*See id.* at 71.) Accordingly, the court concludes that Mr. Cohen's

representation was objectively reasonable.

Similarly, the evidence supports a finding that Mr. Siegel's representation of defendant was objectively reasonable. Although Mr. Siegel also did not recall showing defendant a copy of the proposed plea agreement or any correspondence received from the government (*see id.* at 78), Mr. Siegel recalled that he met with defendant on three occasions before the government's deadline for acceptance of the plea offer (*see id.* at 85-86). Mr. Siegel credibly testified that he communicated to defendant the government's 10-year plea offer and advised defendant that if he rejected the offer, the government would file a prior felony information which "would then double the sentence" from a mandatory 10 years' imprisonment under the plea agreement to a mandatory 20 years' imprisonment upon conviction at trial. (*See id.* at 77-78; *see also* Court Exs. 1, 3.) Mr. Siegel also discussed with defendant the strength of the government's evidence, namely video recordings of the defendant engaged in narcotics transactions, and advised defendant of the strong likelihood of conviction at trial. (*See id.* at 89-90.) For this reason, Siegel counseled defendant to accept the government's 10-year plea offer. (*See id.* at 90.) Defendant testified that when Siegel advised him that his defense was weak and the case was "not triable," defendant sought to relieve Siegel as his trial counsel. (*See id.* at 46.) Based on the

weight of the evidence, the court concludes that Mr. Siegel's representation was objectively reasonable.

Accordingly, the court concludes that defendant has failed to satisfy the first prong of the *Strickland* analysis in that he has not demonstrated that his counsel's performance fell below an objective standard of reasonableness. To the contrary, the credible and reliable record evidence demonstrates, *inter alia*, that both Cohen and Siegel communicated the government's 10-year plea offer to defendant in person on numerous occasions, discussed with defendant the consequences of rejecting the offer given the government's stated intention to file a prior felony information pursuant to 21 U.S.C. § 851, counseled defendant regarding the strengths of the government's evidence, and advised defendant to accept the offer. That defendant may have "subjectively" misunderstood counsel's advice "is not the benchmark; rather, the reasonableness of counsel's efforts to communicate the plea offer to his client determines whether the *Strickland* standard has been met." *See Romano v. United States*, No. 95-CV-3776, 1995 U.S. Dist. LEXIS 13874, at *3 (S.D.N.Y. Sept. 22, 1995), *aff'd*, 101 F.3d 683 (2d Cir. 1996).

**B. Prejudice**

Even if defendant had established that his counsel's performance fell below an objective standard of reasonableness, which he did not, defendant fails to establish that he was

prejudiced by counsel's alleged deficient conduct, as required by the second *Strickland* factor. In particular, defendant has not demonstrated by sufficient evidence that he would have pleaded guilty if he had known of the 10-year plea offer.

"To satisfy the second prong of *Strickland*, a petitioner claiming that his attorney failed to communicate a plea offer to him must establish prejudice by demonstrating a reasonable probability that he would have accepted the offer if he had been aware of it." *Pham v. United States*, No. 99-CV-11613, 2005 U.S. Dist. LEXIS 31252, at *20 (S.D.N.Y. Dec. 20, 2005) (citations omitted); *see Purdy*, 208 F.3d at 49 ("defendant "must demonstrate a reasonable probability that but for [defense counsel's] deficiencies, he would have pled guilty."). "The second *Strickland* prong requires a showing of prejudice which, in the Second Circuit, requires some objective evidence other than defendant's assertions." *Carrion II*, 644 F. Supp. 2d at 471 (citations and internal quotation marks omitted). Such objective evidence may include "a great disparity between the actual sentence and the sentence that effective counsel would have secured for the defendant." *Pham*, 2005 U.S. Dist. LEXIS 31252, at *21 (quoting *Mask v. McGinnis*, 233 F.3d 132, 141 (2d Cir. 2000)); *accord Gordon*, 156 F.3d at 381. Moreover, although a defendant's "insistence on his innocence is a factor relevant to any conclusion as to whether he has shown a reasonable

probability that he would have pled guilty, it is not dispositive." *Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999).

In support of his contention that Cohen and Siegel never advised him that the government had extended a 10-year plea offer, defendant relies on his own testimony that the conversations did not occur and, if they had, he would have accepted the 10-year sentence "[a]s opposed to getting 20 years . . . ." (*See Tr.* at 24.) By contrast, as previously discussed, Mr. Cohen provided coherent, reliable testimony that he advised defendant about the government's offer, which he urged defendant to accept. (*See id.* at 63, 68, 70-71.) Likewise, as discussed above, Mr. Siegel provided reliable testimony concerning his meetings and discussions with defendant, which was corroborated by Siegel's contemporaneous handwritten notes. (*See id.* at 77-78; Court Exs. 1, 3.)

Even considering the disparity between the mandatory 10-year imprisonment term offered by the government and the mandatory 20-year term of imprisonment defendant now faces following the filing of the prior felony information and his conviction, the weight of the objective evidence indicates that defendant would not have accepted the government's plea offer. Defendant testified that it was "possible" that he would have accepted a 5-year plea offer (Tr. at 23) had it been offered,

however, defendant understood that would have required him to cooperate with the government, which he was unwilling to do (*id.* at 20-21). Moreover, the record establishes that although both Cohen and Siegel advised defendant to accept the 10-year plea offer, defendant exercised his right to reject the offer with respect to the narcotics distribution conspiracy charge, which carried a 10-year mandatory minimum sentence pursuant to 21 U.S.C. § 841(b)(1)(A), and consistently maintained his innocence. Indeed, Cohen and Siegel corroborated each other's testimony that defendant refused to plead guilty to the narcotics distribution conspiracy charge and believed himself to be innocent of that offense on the theory that he acted as a "lone" or "independent" operator. (Tr. at 71, 86, 91.)

Based on the evidence, the court concludes that defendant was not prejudiced because he rejected the government's 10-year plea offer having been properly advised of the offer, the strengths of the government's case and the likelihood of conviction, and the disparity in sentencing if convicted after a trial as compared to the government's plea offer. Moreover, defendant has failed to establish a reasonable probability that but for his counsel's alleged deficiencies, he would have accepted the government's plea offer, which would have resulted in a mandatory 10-year term of imprisonment, notwithstanding his proclamation of innocence with respect to

the narcotics distribution conspiracy charge.  Thus, the court

concludes that defendant has failed to establish that he was

denied constitutionally effective assistance of counsel with

respect to the government's plea offer.  Accordingly,

defendant's *pro se* motion is denied.

### C. Sentencing Enhancement

The government requests that defendant receive a 2-

level sentencing enhancement pursuant to U.S.S.G. § 3C1.1

because he obstructed justice by allegedly committing perjury in

"in an attempt to reduce his sentence . . . ."  (Def. Mem. at

11.)  The government does not identify which statements are

perjurious and amounted to obstruction of justice; instead, the

government alleges that defendant "lie[d] to the Court . . .

throughout his October 28, 2009 hearing testimony."  (*Id.*)

Sentencing Guideline § 3C1.1 authorizes a two-level

upward adjustment:

> [i]f . . . the defendant willfully obstructed or
> impeded, or attempted to obstruct or impede, the
> administration of justice during the course of
> the . . . prosecution[] or sentencing of the
> instant offense of conviction, and . . . the
> obstructive conduct related to . . . the
> defendant's offense of conviction and any
> relevant conduct . . . .

U.S.S.G. § 3C1.1.  "[A]n enhancement for obstruction of justice

is appropriate when a defendant 'gives false testimony

concerning a material matter with the willful intent to provide

25

false testimony, rather than as a result of confusion, mistake or faulty memory.'" *United States v. Agudelo*, 414 F.3d 345, 349 (2d Cir. 2005) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)). "[B]efore applying an obstruction enhancement based on perjury, the sentencing court must find by a preponderance of the evidence 'that the defendant 1) willfully 2) and materially 3) committed perjury, which is (a) the intentional (b) giving of false testimony (c) as to a material matter.'" *Id.* (quoting *United States v. Zagari*, 111 F.3d 307, 339 (2d Cir. 1997)); *see United States v. Pirgousis*, 290 Fed. Appx. 388, 392 (2d Cir. Aug. 14, 2008) ("[a]n enhancement under § 3C1.1 is appropriate only if the district court makes a finding that the defendant had the specific intent to obstruct justice, and that finding may be made by a preponderance of the evidence."). The commentary to § 3C1.1 cautions that "inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." U.S.S.G. § 3C1.1, n. 2.

Based on the record evidence, the court concludes that the government has not established, by preponderant evidence, that defendant willfully committed perjury. Although the testimony of Messrs. Cohen and Siegel contradicts defendant's hearing testimony, the court does not find that defendant's

testimony was willfully false, but more likely was the result of confusion, mistake, or faulty memory.  Accordingly, the court declines to apply a 2-level enhancement pursuant to U.S.S.G. § 3C1.1.

## CONCLUSION

For the foregoing reasons, the court denies defendant's *pro se* motion and the government's motion for a 2-level sentencing enhancement pursuant to U.S.S.G. § 3C1.1.  The parties shall appear for sentencing on May 19, 2010 at 3:00 p.m. SO ORDERED.

Dated: Brooklyn, New York
       February 2, 2010

                                    _____/s/_____
                                    KIYO A. MATSUMOTO
                                    United States District Judge
                                    Eastern District of New York